# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| **Roger C. Johnson,** | **Civil No. 06-1141 (JMR-JJG)** |
| Plaintiff, | |
| v. | **REPORT** |
| | **AND** |
| **Commissioner of Social Security,** | **RECOMMENDATION** |
| **Michael D. Quayle,** | |
| **Tim Grover,** | |
| Defendants. | |

JEANNE J. GRAHAM, United States Magistrate Judge

In this action, Roger Johnson petitions for judicial review of a decision by the Commissioner of the Social Security Administration (SSA). After discovering Mr. Johnson (Johnson) was overpaid disability benefits, the SSA initiated proceedings to recover the overpayment. Johnson applied for a waiver from this liability, which was denied initially and on reconsideration, and then requested a hearing before an administrative law judge (ALJ). The ALJ upheld the waiver and Johnson now challenges that decision here.

Johnson is proceeding on his own behalf. The Commissioner is represented by Lonnie F. Bryan, Assistant United States Attorney. The parties submitted cross motions for summary judgment (Doc. Nos. 6, 7), which have been referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c).

## I.     BACKGROUND

Johnson was awarded disability benefits in August 1982. (Tr. at 22.) The SSA sent notices to

Johnson in September 1982 and April 1984, informing that he was obligated to report any changes that affect his benefits, including whether he was working. (Tr. at 23, 26.)

By statute, a recipient of disability benefits is allowed to return to work for a trial period of nine non-consecutive months without forfeiting benefits. 42 U.S.C. § 422(c); *Murphey v. City of Minneapolis*, 358 F.3d 1074, 1079-80 (8th Cir. 2004). If the trial period ends but the recipient still has a disabling condition, that person begins a six-month "reentitlement period." During this period, if the recipient cannot work certain months, that person may still receive disability benefits for those months without reapplying for them. But should the recipient be working at the end of this period, that person is no longer entitled to disability benefits. 20 C.F.R. § 404.1592a; *Flaten v. Secretary of Health & Human Servs.*, 44 F.3d 1453, 1462 (9th Cir. 1995).

In an activity report from July 1991, the SSA noted that Johnson had worked full-time as a painter from April through October 1991 and May through June 1992. (Tr. at 33.) As a result, the SSA determined that the trial period had ended, calculating a reentitlement period as of July 1992. (Tr. at 34.) The SSA sent another notice to Johnson in January 1993, again emphasizing that he was required to report whether he was working. (Tr. at 36.)

The parties do not contest that Johnson worked intermittently during the reentitlement period and then continued to work throughout the 1990s. From 1993 going forward, his reported income was at least $12,000, and may have exceeded $30,000, per year. (Tr. at 55, 62, 72, 81.) Over these years, Johnson continued to receive full disability benefits. (Tr. at 82-83, 156.)

As part of a July 1999 investigation, a case worker noted Johnson was doing painting jobs as an independent contractor. (Tr. at 56, 58, 76.) Based on this investigation, the SSA informed Johnson that

his benefits were under review in April 2000, requesting an account of income reported from 1994 to 1998. (Tr. at 81.) Johnson evidently responded by asking that his disability benefits be terminated. (Tr. at 80.)

The SSA terminated benefits and, following a review of his employment history, determined that Johnson was overpaid disability benefits. When calculating the overpayment, the SSA noted the end of the trial period in June 1992 and credited some benefits that Johnson received during the reentitlement period. (Tr. at 82-83, 156.) The total overpayment was approximately $80,000, and Johnson does not dispute how this amount was determined.

The SSA proceeded with efforts to recover this amount, and Johnson applied for a waiver in July 2002. He asserted that the overpayment was not his fault, but he did not claim that he was unable to pay the SSA back. (Tr. at 103.) The SSA denied waiver by a letter on May 13, 2003, based on the fact that Johnson had not challenged his ability to pay. It also informed Johnson that he could review this matter at a conference with a representative of the SSA. (Tr. at 150.)

At the conference on May 22, 2003, Tim Grover represented the SSA. There are no records of what happened at the conference. According to Johnson, Grover told him that he would only need to pay back $1,200 and the remaining overpayment would be forgiven. (Tr. at 183.)

By a letter on January 24, 2004, the SSA reconsidered the waiver issue and determined that Johnson was not eligible. This decision was again based on the fact that Johnson had not challenged his ability to pay. (Tr. at 152.) In an internal SSA communication that same day, Grover indicated that Johnson was able to repay $115 per month. (Tr. at 155.)

After his request for waiver was denied on reconsideration, Johnson responded by a letter on

3

February 3, 2004.  Recounting the events at the May 22 conference, Johnson claimed,

> I . . . left your Duluth office with the understanding and with Mr. Grover's assurance that he would recommend that my overpayment case would be **"Dismissed Without Fault"** and all but $1,200.00 of the overpayment would be waived in this matter.

(Tr. at 166 (emphasis in text).)  Answering by a letter on February 6, 2004, Grover did not squarely challenge Johnson's version of events.  Instead he said,

> We received your letter expressing disappointment with our January 24, 2004 denial of your waiver request.  The basis for the denial was that your financial statement indicated that you have $115.00 per month available to use toward repaying your overpayment.  Regardless of your fault or lack of fault in causing the overpayment, if you have the financial ability to repay the incorrect payments, we must ask you to do so.

(Tr. at 168.)  Implicit from this response, however, is that Grover had not promised to reduce or waive payback of the overpaid benefits.

Johnson then demanded a hearing about the waiver decision, which took place before ALJ Michael Quayle on August 13, 2004.  The hearing included many pointed questions, by the ALJ to Johnson, about whether he was receiving disability benefits while working.

> Q. I think that if somebody's smart enough to make $50,000 a year, [that person] ought to be smart enough to know that you can't do that and be disabled, which means you can't work.
>
> . . . .
>
> Q. Disability means you can't work.  Is that a concept you understand?
>
> A. Yes, I understand, and I called Social Security when I went back to work.
>
> * * *

4

> Q. Well, you had to be doing pretty well, Mr. Johnson, if you were collecting Social Security Disability and making $48,000 a year[.]
>
> . . . .
>
> Q. So 2000 you must have done pretty good, you made—I thought I saw some pretty substantial wages in 2000 as well, or did I not? Or am I wrong about that? $30,000, $40,000 a year in wages back then or not? In 2000?
>
> A. Actual take home wasn't that.
>
> Q. No. Don't dance with me, Mr. Johnson. Give me the straight answers, I want the truth here. How much were you grossing?
>
> . . . .
>
> A. I don't remember. Maybe $30,000. I don't remember.

(Tr. at 182, 192-93.)

By a decision on December 15, 2004, the ALJ determined that Johnson was not eligible for a waiver of his repayment obligation. The ALJ departed from the previous waiver decisions, which were premised on Johnson's ability to pay. The ALJ instead concluded that Johnson was not without fault when he received the overpayments, based on facts showing that he was working and collecting disability benefits at the same time. (Tr. at 15-16.)

The ALJ recognized Johnson's claim that Grover had promised a reduction or waiver of the repayment. But the ALJ did not address whether this claim was truthful. Confining discussion to whether waiver was appropriate, the ALJ only considered whether Johnson was without fault and did not reach other issues. (Tr. at 15.)

Johnson requested review of the December 15 decision by the Social Security Administration

Appeals Council, and this request was denied by a letter on January 5, 2005. (Tr. at 5, 6.) He now brings his current action for judicial review of the decision by the ALJ.

## II.   DISCUSSION

Johnson contends that the ALJ disregarded his testimony about the meeting with Grover and erroneously concluded he was not without fault. When reviewing a decision by an ALJ, including one to deny waiver and require payback of overpaid benefits, a court examines whether the decision is supported by substantial evidence. *Gladden v. Callahan*, 139 F.3d 1219, 1221-22 (8th Cir. 1998).

For a decision to be supported by substantial evidence, there must be relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). The court must consider evidence that both favors and detracts from the decision. *Kelley v. Callahan*, 133 F.3d 583, 587 (8th Cir. 1998). So long as more than a scintilla of evidence supports the decision, that decision shall be affirmed, even though substantial evidence may also support a contrary outcome. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001).

Under 42 U.S.C. § 404, recovery of overpaid benefits is not permitted "from any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience." So this statute requires, by its plain language, a recipient to be without fault before turning to the question of whether recovery is equitable.

When considering whether a recipient is without fault, the focus is exclusively on the actions of the recipient, and not any mistakes by the SSA. Fault may be attributed to the recipient where the overpayment arises from

> (a)   An incorrect statement by the individual which he knew or should

6

>> have known was incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be material; or
>
> (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have known or expected to know was incorrect.

20 C.F.R. § 404.507; *Gladden*, 139 F.3d at 1222.

When attributing fault to Johnson, the ALJ passed over whether there had been an incorrect statement or failure to furnish information, and looked exclusively at whether Johnson knew or could have known that his payments were incorrect. (Tr. at 15.) The record here showed that Johnson was given notice, on at least three occasions, that working would affect his eligibility for benefits. And Johnson proceeded to work, earning substantial income, while continuing to collect full disability benefits.

This evidence reasonably supports a finding that Johnson either knew, or could have known, that his payments were incorrect. Thus he is not without fault and he cannot be eligible for a waiver of his obligation to pay back benefits. The decision of the ALJ, therefore, is supported by substantial evidence. *Cf. Chapman v. Bowen*, 810 F.2d 151, 152-53 (8th Cir. 1986).

Johnson focuses on the statement, allegedly made by Grover at the May 22 conference, that only $1,200 would be owing and the remaining overpayment would be forgiven. Yet there is no indication, elsewhere in the record, how this statement would bind the SSA or prevent the ALJ from making an independent determination of waiver. Through his letter of February 6, Grover himself implies that the entire overpayment is owing. In any case, this factual dispute is not relevant to the ALJ's determination that Johnson was not without fault.

Johnson also argues that the ALJ was biased and so the decision is flawed. Such allegations may need to be raised before the SSA before they can be examined on judicial review. *See Grant v. Shalala*, 989 F.2d 1332, 1345-46 (3d Cir. 1993). Assuming for the sake of argument that a court may examine this issue, due process requires an ALJ to rule in a fair and impartial manner. But an ALJ is presumed to be unbiased, and the party alleging bias has the burden to show some reason for it. *See Schweiker v. McClure*, 456 U.S. 188, 195 (1982).

Bias cannot be attributed to an ALJ just because that person expresses anger, annoyance, or some other ill disposition toward a party. The conduct of the ALJ must be so extreme as to display a clear inability to rule fairly. *See, e.g., Rollins v. Massanari*, 261 F.3d 853, 858 (9th Cir. 2001); *Gimbel v. Commodity Futures Trading Comm'n*, 872 F.2d 196, 198 (7th Cir. 1989); *cf. Liteky v. United States*, 510 U.S. 540, 550-51 (1994). Where the findings of an ALJ are consistent with the record and a party does not challenge that record, that party cannot assert bias. *Citizens State Bank v. Federal Deposit Ins. Corp.*, 751 F.2d 209, 213 (8th Cir. 1984).

From the questioning at the August 13 hearing, it might be inferred that the ALJ addressed Johnson sharply or displayed some ill temper. But even if so, there is no indication that the conduct was so extreme that it impaired the ability of the ALJ to rule fairly. More importantly, the ALJ made a decision founded on substantial evidence, and Johnson has not shown how this decision is suspect. These facts are not sufficient to overcome the presumption that the ALJ was unbiased and made an impartial decision as required by due process.

In her motion for summary judgment, the Commissioner informally requests that Quayle and Grover be stricken from the case caption, arguing that they are not properly part of this action. This relief may be

framed as a request for their dismissal, based on the failure of Johnson to state a claim against them. Assuming that the Commissioner prevails on her motion for summary judgment, this request is suitably denied as moot.

## III.     CONCLUSION

When the ALJ determined that Johnson was not without fault, and that he did not qualify for waiver of his obligation to pay back benefits, this decision was supported by substantial evidence. This Court concludes, therefore, that the decision of the ALJ should be affirmed and that the parties' motions for summary judgment be handled accordingly.

## IV.     RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Johnson's motion for summary judgment (Doc. No. 6) be **DENIED.**

2. The Commissioner's motion for summary judgment (Doc. No. 7) be **GRANTED.**

3. The Commissioner's application to strike parties from the case caption be **DENIED AS MOOT.**

Dated this 9th day of February, 2007.                    s/Jeanne J. Graham

                                                                                JEANNE J. GRAHAM
                                                                                United States Magistrate Judge

## NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by March 1, 2007. A party may respond to the objections within ten days after service. Any objections or responses filed under this rule shall not exceed 3,500 words. The

District Court shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.